Hitchcock, J.
It will be seen, from the statement of the case *249 and the errors assigned, that the four first errors question the propriety of the action of the city council of Cincinnati, in laying out and opening a street in that city; also, in assessing the damages sustained, and in assessing a special tax to make compensation for those damages. These proceedings, although they may have led to the subsequent action of the mayor, do not constitute any part of the transcript sent up by him, in obedience to the writ of certiorari. They are not certified by him, but by the city clerk, We have before us, in fact,-two transcripts from two different tribunals, and errors ate assigned upon each, although there is but one certiorari. And, so far as it respects the proceedings of the city council, the question naturally presents itself, whether these proceedings can be by this court reviewed in this manner. This question has been, as well as all the other questions raised, ably and elaborately argued by counsel.
By the constitution, the judicial power of the state is vested in a supreme court, courts of common pleas, and justices of the peace; but the specific jurisdiction of each is, in most cases, left to bo prescribed by the legislature. Section 6 of article 3 provides, however, that “the judges of the court of common pleas shall, within their respective counties, have the same powers with the judges of the supreme court, to issue writs of certiorari to justices of the *peace, and to cause their proceedings to be brought before them, and the like right and justice to be done.” If we look, then, to the constitution alone, the use of the writ of certiorari would seem to be confined to the removal of causes from a justice of the peace to a higher tribunal. But such could not have been the intention of the convention.
By section 3 of the act “ to organize the judicial courts” (Swan’s Stat. 222), it is provided that “ the Supreme Court shall have power, on good cause shown, to issue writs of habeas corpus, cum, causa certiorari, mandamus, prohibition,” etc. And further, “ that either of the judges of said court, in vacation, shall, on good cause shown, have power to grant writs of error, supersedeas, and certiorari; and also to grant writs of habeas corpus, for the purpose of inquiring into the cause of commitment.”
In section 4 of the same act, the court of common pleas is invested with the “ same power to issue remedial and other process (writs of error and mandamus excepted), as the Supreme Court hasand the judges of that court have power, within their proper *250 jurisdiction, in vacation, on good, causo shown, to allow writs of certiorari, directed to justices of the peace.
The power of either couyt to issue a writ of certiorari, or of an individual judge, in vacation, to allow such writ, in a proper case, can not then be doubted. But the question is, as to what constitutes a proper case. Hitherto generally, if not universally, in our practice, these writs have been issued by this court, and allowed by its judges, to remove cases from the court of common pleas to this court, for some alleged error in that court, where the proceedings were not according to the course of the common law. And it has been held, contrary to the practice in England, that the proceedings could not be removed until after the final order of the court of common pleas, in the particular case. In fact, there has been no difference, in practice, as to the effect of the writ of certiorari, and the writ of error, except that *the former has been applied to cases where the proceedings are not according to the course of the common law, while the latter has been applied to cases where they ai*e. There can be no doubt there are other cases where a remedy might with propriety be sought, through the instrumentality of this writ. But it does seem to a majority of the court, that, in a case like the one before us, it is not the appropriate remedy, that is, so far as the action of the city council is concerned; and it seems to us that the authorities cited by counsel sustain us in this decision. Those proceedings may have been, and we incline to the opinion that they were,, in some respects, irregular, but we can not review them in this case.
The fifth error assigned is, that the mayor is not authorized by law, to enter the said judgment against Dixon.
This is undoubtedly true. There was formerly an ordinance of the city council, authorizing the mayor to enter such judgments; and, under that ordinance, the judgment, in the case of Cincinnati v. Gwynne, 10 Ohio, 192, was entered. The tax in the case now before the Court, was applied under an ordinance passed May 29,1839, which repeals former ordinances upon the same subject. This ordinance provides, “ that all special taxes authorized by this or any other ordinance of said city, by petition or otherwise, shall be levied and collected in the following manner, unless ¿herwise specially provided for, to wit: a certified copy of the list of assessment shall be by the city clerk delivered to such person or persons as the city council may appoint for that purpose, *251 whose duty it shall bo to make immediate demand, of payment of the owner or owners, their agents or guardians, if they be found in said city, or if not, then on the premises so assessed; and, in case of failure to collect said tax on demand, as aforesaid, the said persons or lots so delinquent shall be forthwith reported to the mayor; and, if he is satisfied that lawful demand has been made, as above specified, he shall issue a warrant directed *to the marshal, commanding him to seize the real estate upon which such tax shall have been charged, as aforesaid, and sell by public auction so much,” etc. It will be seen, by this part of the ordinance, that no judgment is necessary — a mere ministerial act is to bo performed by the mayor. If the tax is not paid on demand, to the collector, he is to make returns to the mayor ; and thereupon, the mayor, without any preliminary proceedings, if satisfied that the return is correct, is required to issue a warrant to the marshal, requiring him to sell, etc. This was all done in the case before the court; a copy of the assessment was delivered to the collector; he had demanded the tax, which was not paid; of this fact he made return to the mayor, who thereupon issued his warrant. On the same day, however, he entered the judgment, which is claimed to bo erroneous. But it is worthy of remark, that the warrant is not at all based upon the judgment. In no part of that instrument is the judgment named. It merely recites such facts as go to prove the propriety of its being issued — such facts as show that, under the ordinance, it was the duty of the mayor to issue it. Counsel say, with propriety, that the mayor was not authorized to enter said judgment. He had no more power to do it, than would a justice of the peace have to enter a judgment in ejectment, or any private individual a judgment of any description. What is the consequence? The judgment is void; a perfect nullity, so far as respects rights acquired under it. It conferred no power upon the mayor to issue the warrant. He did not treat it as if it conferred any such power.
But does it follow that because the mayor had not power to render the judgment, therefore it shall be reviewed on writ of certiorari? If we were to do it, no good could possibly result. It is a nullity as it stands, and if reversed, it would bo nothing more nor less than a nullity. In fact, the reversal would be a vain thing. The truth is, the judgment is not the matter which disturbs the plaintiff in certiorari. The foundation of the complaints, on the *252, 253 previous proceedings of the city council, *in opening the street and assessing the tax, and not so" much the former as the latter. The existence of the judgment is seized upon as the basis of a writ of certiorari, in the expectation that when the judgment, void as it is, is before the court, the court will be induced to review and pass upon the legality of those previous proceedings of the council.
The other errors assigned, are relative to this judgment, with the exception of the one which charges that there is no law authorizing the sale of the property by the marshal, in pursuance of the warrant to him directed, nor to pass the title to the property when sold. If it be so, then a sale would do no injury to the rightful owner. He would not be divested of his interest; or if he was apprehensive that such sale might cast a cloud over his title, his proper remedy is in a court of chancery, where the sale might be prevented by injunction. But surely this circumstance can not operate as a legitimate foundation for a certiorari.
Upon the whole, after mature deliberation and reflection, a majority of the court are of opinion that the writ of certiorari was improvidently issued, and that the case must be dismissed for want of jurisdiction.