CHARLES R. LEE, ADMR. v. ELEANORA S. SCOTT ET AL.

1. OPERATIVE WORDS OF CONVEYANCE REQUIRED TO ENGRAFT REVERSION UPON GRANT, OR TO CONVEY REMAINDER IN FEE.

Where by deed an estate in fee simple is granted, the same cannot be reduced to a life estate by another instrument executed concurrently with such deed, purporting to reserve a fee to the grantor in the deed or to convey a fee to another to vest upon the death of the grantor in the deed, unless such other instrument shall contain appropriate operative words of conveyance of such remainder or reversion.

2. WORD "HEIRS" NECESSARY TO CONVEY FEE SIMPLE, EXCEPT.

In Ohio it is necessary as a general rule to use the word, "heirs," in a deed to convey an estate of inheritance.

3. AFTER ACQUIRED REALTY PASSES UNDER RESIDUARY CLAUSES OF WILL.

Where testatrix, at the time of making her will, was the owner of a real estate mortgage by assignment, and thereafter, without resorting to foreclosure proceedings, the land encumbered thereby was conveyed by the mortgagor to testatrix in satisfaction of the mortgage debt, such after acquired land passes, under the general residuary clause of the will devising all the rest and residue of the estate, to the devisees therein named. James v. Pruden, 14 Ohio St. 251, approved and followed; Lepley v. Smith, 7 Circ. Dec. 264 (13 R. 189), distinguished.

APPEAL.

Lucas County.

**I. N. Huntsberger,** for plaintiff:

Several separate instruments, executed at the same time between the same parties and referring to the same subject-matter, will be construed together as one contract or transaction, and the effect of one instrument will be held to be limited or controlled by provisions in the other. Thayer v. Luce, 22 Ohio St. 62; White v. Brocaw, 14 Ohio St. 339; 17 Am. & Eng. Enc. Law (2 ed.) 9, 10; 4 Kent's Commentaries 135, 141; 11 Am. & Eng. Enc. Law (1 ed.) 514; 2 Smith Lead. Cas. 259; Livingston v. Story, 36 U. S. (11 Pet.) 351 [9 L. Ed. 746]; Jacobs v. Mitchell, 46 Ohio St. 601 [22 N. E. Rep. 768]; Railway v. Railway, 44 Ohio St. 287 [7 N. E. Rep. 139]; Ruffner v. Evans, 1 Circ. Dec. 368 (2 R. 70); Dayton & U. Ry. v. Shoemaker, 2 Circ. Dec. 270 (3 R. 473); Heintz v. Sawyer, 13 Dec. 719; Gaffney v. Hicks, 131 Mass. 124; Hunt v. Livermore, 22 Mass. (5 Pick.) 395; Rogers v. Smith, 47 N. Y. 324; Draper v. Snow, 20 N. Y. 331 [75 Am. Dec. 408]; Wilson v. Randall, 67 N. Y. 338; Jackson v. Dunsbagh, 1 Johns. Cas. 91; Treadwell v. Archer, 76 N. Y. 196; Cummings v. Antes, 19 Pa. St. 287; Reed v. Field, 15 Vt. 672; Gammon v. Freeman, 31 Me. 243; Kenyon v. Nichols, 1 R. I. 411; Odiorne v. Sargent, 6 N. H. 401; Casey v. Holmes, 10 Ala. 776.

The following cases show numerous applications of the foregoing rule. Marshall v. Stewart, 17 Ohio 356; Wilson v. Giddings, 28 Ohio St. 554; Wright v. Bates, 13 Vt. 341; Slutz v. Desenberg, 28 Ohio St. 371; Patrick v. Littell, 36 Ohio St. 79 [38 Am. Rep. 552]; Coleman v. Miller, 8 Dec. Re. 179 (6 Bull. 199); Loring v. Melendy, 11 Ohio 355; Fleming v. Donahue, 5 Ohio 255; Broadrup v. Woodman, 27 Ohio St. 553; Paddock v. Adams, 56 Ohio St. 242 [46 N. E. Rep. 1068]; Harvey v. Gardner, 41 Ohio St. 642; Russell v. Bruer, 64 Ohio St. 1 [59 N. E. Rep. 740]; Mathews v. Leaman, 24 Ohio St. 615; Stall v. Cincinnati, 16 Ohio St. 169; Miller v. Stokeley, 5 Ohio St. 194; Mannix v. Purcell, 46 Ohio St. 102 [19 N. E. Rep. 572; 2 L. R. A. 753; 15 Am. St. Rep. 562]; Stephenson v. Donahue, 40 Ohio St. 184; Vance v. Park, 8 Circ. Dec. 425 (15 R. 713).

No particular form of words need be used to create a trust, and the words "trust" or "trustee" need not be used for that purpose. 1 Perry, Trusts Secs. 82, 83; Cresswell v. Jones, 68 Ala. 420; Packard v. Railway, 168 Mass. 92 [46 N. E. Rep. 433]; Chadwick v. Chadwick, 59 Mich. 87 [26 N. W. Rep. 288].

Termination of trust estates. Gloyd v. Roff, 1 Circ. Dec. 472 (2 R. 253); Taylor v. Huber, 13 Ohio St. 288; Rittenhouse v. Hicks, 10 Dec. Re. 759 (23 Bull. 269); Soteldo v. Clement, 11 Dec. Re. 802 (29 Bull.

Lee v. Scott.

384) ; Cornwell v. Wulff, 148 Mo. 542 [50 S. W. Rep. 439; 45 L. R. A. 53] ; Elphinstone, Interp. Deeds Rule 101, P. 271.

The word, "heirs," is not absolutely essential to pass the legal title in fee, when the express provisions of the conveyance require a fee and the recitals and conditions plainly evidence an intention to pass the entire estate, as in the case at bar, an absolute power of sale being inferentially given Mary and Albert, in addition to the provision that the property "shall revert in fee simple." Brown v. Bank, 44 Ohio St. 269 [6 N. E. Rep. 648] ; Bank v. Johnson, 47 Ohio St. 306 [24 N. E. Rep. 503; 8 L. R. A. 614] ; Williams v. Presbyterian Church Soc. 1 Ohio St. 478, 497; Stambach v. Fox, 8 Circ. Dec. 625 (16 R. 427) ; Martin v. Jones, 62 Ohio St. 519 [57 N. E. Rep. 238].

Enforcement of defectively executed trusts. 1 Perry, Trusts Secs. 95, 96, 98, 99, 159, 160, 240; Elphinstone, Interp. Deeds 149, 150.

The deed and lease taken together in this case may be construed as a covenant by Marion to stand seized for the use of Mary and Albert for life, and for Mary in remainder in fee; and such deed is good, though the use is to arise after the decease of the covenantor, and though it does not affect to dispose of the freehold in the meantime. Rigden v. Vallier, 2 Ves. Sr. 252; Doe v. Whittingham, 4 Taunt. 20; Coultman v. Senhouse, Th. Jones 105; Ofman v. Sheafe. 3 Lev. 370; Doe v. Prince, 20 L. J. C. P. (N. S.) 223; 6 Mews. Eng. Case Law Dig. 350; Bryan v. Bradley, 16 Conn. 474; Elphinstone, Interp. Deeds 41.

Whether the limitation over to Albert in case he survived his wife, is not repugnant to the prior provision that the property should revert in fee simple to Mary. Finlay Brewing Co. v. Dick, 13 Dec. 581, affirmed by circuit court, without report; Pendleton v. Bowler, 11 Dec. Re. 551 (27 Bull. 313) ; 24 Am. & Eng. Enc. Law (2 ed.) 417, 429, n. 2; Avery v. Everett, 110 N. Y. 317 [18 N. E. Rep. 148; 1 L. R. A. 264; 6 Am. St. Rep. 368].

The property in question was not ancestral in Albert Scott, whether it came to him through his wife's will or by virtue of her trust deed to Marion, limiting it over to him in case of his survival. A wife is not the ancestor of the husband. Birney v. Wilson, 11 Ohio St. 426; Brower v. Hunt, 18 Ohio St. 311; Stembel v. Martin, 50 Ohio St. 495 [35 N. E. Rep. 208].

Ancestral property. Elphinstone, Interp. Deeds 148, 149; Price v. Jenkins, 5 Ch. D. 619; Gale v. Williamson, 8 Mees. & Wels. 405; Harmon v. Richards, 10 Ha. 81; Groves v. Graves. 65 Ohio St. 442, 449 [62 N. E. Rep. 1044]

When a valuable consideration is expressed in a deed, the title is one by purchase, and it is not competent to show by parol that in fact the title came by deed of gift, and thereby change the descent. Groves v. Groves, 65 Ohio St. 442 [62 N. E. Rep. 1044]; Brown v. Whaley, 58 Ohio St. 654 [49 N. E. Rep. 479; 65 Am. St. Rep. 793]; Ossman v. Schmitz, 24 O. C. C. 709.

Parol evidence is admissible to ascertain the object of the parties in executing the instruments. Cleveland P. & S. Wks. Co. v. Carbon Co. 25 O. C. C. 307; Brick v. Brick, 98 U S. 514 [25 L. Ed. 256].

Construction. Wolfe v. Scarborough, 2 Ohio St. 361; Elphinstone, Interp. Deeds 36, 37 to 41, 76 to 84; Devlin, Deeds Secs. 836, 840; Hickey v. Railway, 51 Ohio St. 40, 48 [36 N. E. Rep. 672; 23 L. R. A. 396; 46 Am. St. Rep. 545]; Railway v. Railway, 44 Ohio St. 287 [7 N. E. Rep. 139]; Mintier v. Mintier, 28 Ohio St. 307; Hoffman v. Mackall, 5 Ohio St. 124 [64 Am. Dec. 637]; Walton v. Drumtra, 152 Mo. 489 [54 S. W. Rep. 233]; Jecko v. Taussig, 45 Mo. 167; German F. Ins. Co. v. Roost, 55 Ohio St. 581 [45 N. E. Rep. 1097; 36 L. R. A. 236; 60 Am. St. Rep. 711]; Ashland Mut. F. Ins. Co. v. Housinger, 10 Ohio St. 10; Kelly v. Mills, 8 Ohio 325; Barhydt v. Ellis, 45 N. Y. 107; Miller v. Railway, 90 N. Y. 430 [43 Am. Rep. 179]; Elphinstone, Interp. Deeds Rule 16, 17 and notes; Martin v. Jones, 62 Ohio St. 519, 525 [57 N. E. Rep. 238]; 17 Am. & Eng. Enc. Law (2 ed.) 7; Mosier v. Parry, 60 Ohio St. 388 [54 N. E. Rep. 364]; Chamberlain v. Railway, 15 Ohio St. 225; Hildebrand v. Fogle, 20 Ohio 147.

Clear and convincing evidence is required to divert an estate from the lawful channel of descent. Shahan v. Swan, 48 Ohio St. 25 [26 N. E. Rep. 222]; Davis v. Davis, 62 Ohio St. 411 [57 N. E. Rep. 317; 78 Am. St. Rep. 725]; Wade v. Loach, 42 Bull. 254.

See also Challis, Real Prop. 206; Thompson v. Thompson, 17 Ohio St. 649; 2 Kerr, Real Prop. Secs. 1623 to 1640.

**W. H. A. Read, Marshall & Frazer, C. W. Everett, F. W. Sturdivant, F. J. Flagg, Samuel Foster** and **Clarence Tinker,** for defendant.

PARKER, J.

This case is in this court on appeal. Primarily it was an action brought by the administrator named to bring to sale real estate, in this city, which he alleged belonged to the decedent, in order that the proceeds might be used to discharge decedent's debts; but it appearing that the legal title was not in decedent at the time of his death, or at least not clearly so, the facts in respect thereto are set forth in the petition, and it is asked that the title may be quieted. There is serious resistance to

this application, for it has aroused the opposition of various interested parties. They are all brought into court and file their answers and cross petitions, and the issues are made up and the question of the ownership of this property is submitted to this court; and that is the principal issue in this case. Certain facts with respect to this property and the relationship of the parties are set forth in the amended petition, many of which are not disputed. It is therein averred that Albert E. Scott died on September 29, 1903, leaving a will, in which he nominated Mary D. Scott, his wife, as executrix, and by which he devised and bequeathed to her all of his property, both real and personal, after the payment of his debts and funeral expenses, but that his wife died two days before he died, whereby this devise and bequest lapsed. It sets forth the amount of the property of the decedent and the amount of his debts, and about these there is no controversy; it is conceded that the situation of his estate is such as that this property should be brought to sale to pay these debts, if it was his property.

The amended petition proceeds to state that the decedent left no widow, nor children, nor any descendents of children, but left as his next of kin and heirs at law certain persons, who are named, and it also sets forth all his heirs on his maternal side as well; that these various persons, as heirs or as devisees under the will of Marion L. Scott, his mother, claim some interest or title to this property which consisted of a single lot with a dwelling thereon, described as lot No. 868 in the Vistula division of the city of Toledo, Lucas county, Ohio; that the property was occupied by decedent in his lifetime as a homestead. And the plaintiff avers that said premises formerly belonged to Frances P. Lyman, mother of said Mary D. Scott, who was decedent's wife, and that upon the death of Frances P. Lyman she devised the same in equal shares to her husband, James Lyman, and said Mary D. Scott by will duly admitted to probate in said county; and thereafter, on February 16, 1872, the said James Lyman, in consideration of $100, conveyed all his interest in said premises to said Mary D. Scott by deed recorded March 16, 1872, in Vol. 71 of Deeds, page 230, and that thereafter, on January 29, 1883, said Mary D. Scott and said Albert E. Scott, in consideration of one dollar and the execution and delivery to them of the indenture and other considerations mentioned, conveyed said premises to Marion L. Scott, the mother of said Albert E. Scott by deed filed for record on January 31, 1883, giving the date of record, volume and page:

"That while said deed standing alone appears to be absolute upon its face it was not so intended by the parties thereto, but was intended to be and in fact was, only a conveyance of the naked legal title of said

property to said Marion L. Scott, to hold the same in trust during her life for the joint use and benefit of the grantors therein, and at her death said legal title was to revert to said Mary D. Scott in fee simple; that said limitation and trust were duly set forth and declared by an instrument duly executed by all of the said parties at the same time and as a part of the same transaction and as a part of said deed, in the form of an indenture of lease, a copy of which is attached hereto and made a part hereof marked exhibit A and which was filed for record at the same time with said deed and duly recorded in Vol. C of Leases, pages 571 and 572 of the records of said county.

"That by the provisions of said deed and said declaration of trust taken together, said Marion L. Scott agreed and covenanted to stand seized of said premises during her life for the use and benefit of said Mary D. Scott and Albert E. Scott, who were to have full and complete possession and enjoyment thereof, and to pay all taxes and assessments thereon, insure the buildings thereon, and make all necessary repairs and alterations and to have the right to sell or dispose of said property in fee simple; and said Marion L. Scott further covenanted therein that in the event of her death said property should revert in fee simple to said Mary D. Scott, the original owner thereof; and it was further covenanted therein between said parties that said Albert E. Scott should have, during his lifetime, a joint interest in benefits arising from rents or sale of said premises or other property bought with the proceeds thereof, and in case he survived his wife, he should then have full and entire use thereof.   Plaintiff says that said Marion L. Scott never had any beneficial interest in said premises, but that from the date of said trust deed to the time of her death she held only the naked legal title thereto in trust as aforesaid, and that the equitable title and beneficial ownership thereof was during said interval held by said Mary D. Scott.

"Plaintiff further says that at the time of the execution of said trust deed and declaration, said Albert E. Scott was the only surviving child of said Marion L. Scott, he being the offspring of her marriage with her uncle, Samuel Belden Scott, a brother of her mother, and said Albert E. Scott was then, and practically all his life had been, and thereafter continued to be, somewhat weak and lacking in physical health and strength, and moderate in capacity, and, therefore, his mother, said Marion L. Scott, was at all times very solicitous about his welfare and took much care of him, making provisions for his needs and advising and assisting him in the management of his affairs; that at said time he owned no real estate and but little personal property, and for a long time theretofore he had lived, and was then living, with his said wife in

said homestead property belonging to her, which was substantially all the property she owned, and which continued thereafter to be their home and remained in their possession and ownership until their death; that said Albert E. Scott was about forty years old and his said wife about forty-three years old when said trust was executed, and neither of them had then any children nor any probability of having any, and both in fact died childless.

"Plaintiff further says that, in view of said situation and circumstances of said parties, it was their intention and purpose by means of said trust deed and declaration to secure to the grantors in said deed and protect them in the use and enjoyment of said homestead, and especially to secure to said Albert during his life an interest'in the use and enjoyment thereof and protect him therein. That said Marion L. Scott died on April 30, 1887, and thereupon her trusteeship and title under said deed ceased and determined, and said premises reverted in fee simple to said Mary D. Scott in accordance with the limitation contained in said declaration of trust, and she thereafter continued to own and hold the same in fee simple until September 27, 1903, when she died, leaving a will which was, on October 9, 1903, duly admitted to probate in the probate court of said county, and by which she devised and bequeathed to her said husband, Albert E. Scott, all her real and personal property, subject to the payment of her debts and the erection of a suitable monument for her."

Now, upon these allegations, as I have said, there is based a prayer for the quieting of this title and for a sale of the property, and much that I have read and stated is not disputed. It is contended, however, on the part of others interested, and resisting this application, that the consideration of the conveyance from Mary D. Scott and her husband to Marion L. Scott—the mother-in-law of the former and the mother of the latter—was not one dollar simply, and they dispute the construction put upon this instrument, by which it is claimed on the part of plaintiff that she was a trustee; they say that she paid a full consideration for the premises, considering the estate that she allowed to be carved out for the benefit of her son and daughter-in-law, and that she took this legal title fully subject to that estate, which it is said was an estate for the joint lives of the husband and wife and of the survivor of them; that the remainder in fee was vested in Marion L. Scott by the conveyance from Albert E. Scott and his wife to her and that she was never divested of it, and that, therefore, those claiming from her are entitled to this property. Without entering into a lengthy discussion of the evidence, I will say that we, conclude that the evidence supports the

claim and contention that Marion L. Scott paid a valuable consideration for this property.

We find from the evidence that on February 9, 1872, Mary D. Scott and Albert E. Scott, her husband, and James L. Dickenson, executor of a certain estate which seems to have had some claim upon this property, executed a mortgage to the Northwestern Savings Bank and Depository of this city, to secure a loan of $2,500; that this mortgage indebtedness amounting when paid to $2,718.50, was paid by Marion L. Scott to the bank; and we find that it had not been repaid to her or to her estate. The instruments conveying this title, referred to in the pleading that I have read, were executed on January 29, 1883 and recorded on January 31, 1883, some eleven years after the bank had received its money upon this loan, and upon the same day the entry of satisfaction was indorsed upon the mortgage and was filed for record, and we find that Marion L. Scott had held it until that time. We have not made a computation of the amount, or what would then be due of principle and interest, but it is clear to us that, considering the estate which we find she had carved out of the property through these instruments, for her son and daughter-in-law, she paid full value for all that she received and retained.

Now, on January 29, 1883, Mary D. Scott and Albert E. Scott executed and delivered to Marion L. Scott a quitclaim deed to this property conveying to her—having regard to the terms of the deed alone—a fee simple estate therein, and upon the same day an instrument in writing was executed by Marion L. Scott to Mary D. Scott and Albert E. Scott, which is denominated upon its face, a "lease," which appears to have been executed as a part of the transaction in which the deed was given. The deed recites a consideration of one dollar. This other instrument was executed with the formalities required in the execution of a deed. It is this paper which gives rise to the dispute and all the difficulties of the case. It is somewhat uncertain what it was intended by the parties to be. In some of its phases and features it appears to be a lease; in some respects it resembles a deed and in other respects it resembles a testamentary disposition of property, and in others still a contract between the parties respecting property in which they are all interested and not answering to the description of either a deed, lease or will. I shall read this paper: (It starts out with the word "Lease.")

"This indenture, made this twenty-ninth day of January, A. D. 1883, between Marion L. Scott, of the city of Toledo, county of Lucas, and state of Ohio, party of the first part, and Mary D. and Albert E. Scott, of the same place, parties of the second part,

"*Witnesseth*, that the said party of the first part, in consideration of the rent, covenants and conditions hereinafter mentioned to be performed and kept, and the fulfillment of each and every one of them by the said parties of the second part, at the time and in the manner herein specified, do let and lease unto the said parties of the second part jointly during the life of said parties of the second part, or either survivor of the said second parties:

"Town lot No. 8681, Vistula division of said city of Toledo, with all rights and privileges thereto belonging, from the day and date of this indenture above written.

"The said parties of the second part in consideration thereof do hereby covenant and agree to pay the said party of the first part as rent for said premises the nominal sum of one dollar per year, all taxes and assessments that may be levied upon said·premises, and to insure the building thereon sufficient to cover loss of same and make all necessary repairs and alterations.

"*It is further understood and agreed*, that in the event of the death of the lessor, party of the first part, the property herein mentioned shall revert in fee simple to Mary D. Scott, a party of the second part, and that said Albert E. Scott, also a party of the second part, shall have during his lifetime a joint interest in benefits arising from rents or sale of said premises or other property bought with the purchase money received from such sale, and in case he shall survive his said wife, the said Mary D. Scott, then he shall have full and entire use of the said premises or of other property derived therefrom and of the rents and income thereof.

"*And be it further understood*, that in the event of the death of the last surviving party of the second part, the premises herein mentioned or other premises purchased with the money received from the sale of said premises, or the money received from the sale thereof, shall be divided by the survivor of the parties hereto, to such charitable or religious institutions of the city of Toledo, as said survivor shall deem best.

"*In witness whereof*, the said Marion L. Scott, Mary D. Scott and Albert E. Scott, have hereunto set their hands and seals the day and year above written."

They all signed and sealed it and it is duly witnessed, and acknowledged with the formality required of a deed. The claim of the plaintiff upon this instrument, taken in connection with the quitclaim deed, has been sufficiently stated by the reading of the amended petition. Others claiming this property or an interest in it are the devisees of Marion L. Scott, who died April 30, 1887, and by her last will and testa-

ment, executed January 31, 1879, and certain codicils subsequently executed, devised her estate, and it is claimed by her devisees represented here that she devised this as well as other parts of her estate. The heirs of Albert E. Scott, of the blood of his mother, claim that this property was inherited by him from his mother; that it did not pass by her devise and, therefore, they claim it by inheritance from him as property coming from his maternal ancestor. The heirs of Albert E. Scott of another branch, and perhaps all of his heirs, claim shares because of his having taken this property, as they aver, by devise from his wife; and the executors of Mary D. Scott claim some interest in the premises, it appearing that there may be some debts of hers to be discharged.

I do not know that I have stated all the claims of all the various parties here, but I have stated as many of them as it will be necessary to consider in the disposition of the case, considering the conclusions at which we have arrived. Now, as I have intimated, we regard this so-called "lease" as a very curious and perplexing instrument. We think there is no very great deal of difficulty in arriving at substantially what the parties intended or purposed to do, but in certain contingencies there might have been very serious difficulty in giving effect to their purposes and intentions. It seems to us that the purpose was to allow Albert and his wife, Mary, to occupy these premises and have the full use and enjoyment of them during their joint lives, and that the same privilege should follow to 'the survivor of them, and that, at least during the lifetime of the mother, Marion L. Scott, they were to pay the nominal sum of one dollar per year, and that they were also to pay the taxes and assessments and insure the building sufficiently to cover the loss of the same, and that they should make the necessary repairs and alterations.

It may be doubted if there was any obligation resting upon them to do any of these things if they survived the mother, she being recognized as the lessor and the owner by those provisions. Then if they should survive her mother, they were each to have substantially the same interest in the property and the same rights in the property during their joint lives and for the life of the survivor of them, excepting as I say, their interest may have been disencumbered or relieved of this obligation to pay rent, or to insure or to make repairs or alterations, and perhaps the instrument contemplated a power of sale that might be exercised by Mary D. Scott if she survived her mother, a power to sell and convey that would carry the whole estate, that is to say, the fee simple, and if that is so, we think the same sort of power and authority are conferred upon Albert E. Scott, notwithstanding the fact that with respect to Mary D. the term "fee simple" is used to describe the estate that she

Lee v. Scott.

should take; the same dominion and the same right or *jus disponendi* seems to have been conferred upon the one as upon the other.

Now this last clause in the instrument has received different interpretations at the hands of different interest here, but our conclusion is that it means this: that the survivor therein named—not necessarily the survivors of the parties of the second part, that is, Albert and Mary— nor on the other hand, Marion L., the lessor, but the one of the three who should survive the other two shall devote the property to charitable and religious uses; and it amounts to a sort of a compact between the three, that the estate is not to go to the heirs of any of them, but that the survivor of the three shall dispose of it to charitable or religious uses. "And be it further understood"—there are no words of grant there—"that in the event of the death of the last surviving party of the second part, the premises herein mentioned, or other premises, or the money received from the sale of said premises, or the money received from the sale thereof"—that is, from the sale of the premises bought from the proceeds of the sale of the first—"shall be divided by the *survivor of the parties hereto* to such charitable or religious institutions of the city of Toledo, as said survivor shall deem best." And that was not to occur until after the expiration of these estates given to Albert and Mary Scott.

There are no words in this instrument defining an estate in fee simple; there are no words of inheritance limiting an estate in fee simple either to Albert or to Mary, his wife; there are no apt or operative words of conveyance to effect their transfer of an estate in fee simple; there are no words of grant. The instrument standing alone, we think it must be conceded, could not have carried any estate beyond the life estates defined; the only instrument here that conveys an estate in fee simple is the quitclaim deed, and in giving effect to this instrument we are not to lose sight of the fact that one is a deed and the other is denominated a lease, and that the scrivener or person who prepared them was a lawyer—Albert E. Scott, one of the parties who seems to have had some notion of the kind of instrument which should be drafted and executed to convey certain estates or interest, though in the use of the terms he seems to have been in some confusion of mind.

It may be doubted if he has accomplished the general purpose which seems to have been in the minds of the three parties concerned in respect to the remainder after the decease of the survivor: First, because the instrument lacks proper operative words of conveyance to convey the title to anybody after it had been vested in Marion L. by deed; and, secondly, because the arrangement is so indefinite in not pointing out

any of the institutions, religious or charitable, that were to be the bene-
ficiaries, that it could not be enforced. Had the survivor—who was
Albert—undertaken to carry this purpose out by making a disposition
of the property for charitable and religious purposes according to the
intention manifested here, it might have raised a very different question;
it would have raised a question then as to whether there was such a
power conferred upon him by the instrument. But he did not attempt
to do that. And what we must determine, if we can, is where the fee
simple title was left by this instrument, in the absence of an attempt
on the part of anybody to execute any power of disposition that may
be confirmed by the instrument.

It is contended by the plaintiff that this instrument should be read
in connection with the deed and regarded as defining the trust to be
executed by Marion L., or, at all events, as defining the trust pending the
execution of which Marion L. was to hold the legal title to this property;
but, as I have said, treating of this last provision (and that is all we
have to deal with since the life estates have been enjoyed and have ex-
pired and have no further interest for us), if it was designed to raise or
impress a trust, the trust is so indefinite that a court of equity could not
seize upon it and appoint a trustee to execute it.

The same difficulty would meet us should we regard it as counsel
for the plaintiff contend we should—as a covenant on the part of Marion
L. to stand seized to certain uses. I shall not try to follow counsel in
all their various claims with reference to this property and what was
possibly intended or possibly accomplished, but, with respect to this
claim, it seems to me that it is hardly tenable, owing to the fact that
there is no covenant whatever upon the part of Marion L. Scott—not a
word of covenant from the beginning to the end of either of these papers.
If we should undertake to treat this instrument as a part of the deed,
and as limiting or qualifying the fee simple estate conveyed by the deed
survivor, or a conveyance to Albert of the remainder if he should be the
survivor, then we are again met with these difficulties I have mentioned,
to wit, there are no operative words of conveyance; and we understand
that operative words of conveyance are required either to engraft a reser-
vation of a fee in reversion upon a grant of a fee simple, or to convey a
remainder in fee, in such wise as to reduce the fee simple granted to an
estate for life, or anything less than a fee simple. Now, with respect to
the necessary operative words, there is something said in 9 Am. & Eng.
Enc. Law (2 ed.) 137. I read:

"The granting clause, which is a part of the premises, manifests
the grant or transfer, and this is best accomplished by certain operative

Lee v. Scott.

words peculiarly adapted to that purpose, with reference to the nature of the deed.''

And then are given, in a note, the proper and necessary operative words, i. e.

''Operative words of the various forms of conveyance—Feoffment—'Give, grant and enfeoff.'

''Gift—'Give and grant.'

''Grant—'Give and grant.'

''Lease—'Demise, grant, and to farm let.'

''Exchange—'Exchange.'

''Release—'Remise, release, and forever quitclaim.'

''Confirmation—'Give, grant, ratify, approve, and confirm.'

''Surrender—'Surrender, grant, and yield up.'

''Release—Quitclaim—'Remise, release, and forever quitclaim.'   *   *   *

''Bargain and sale—'Bargain and sell.'   *   *   *

''Covenant to stand seized—'Covenant to stand seized·to the use of.' ''

That some appropriate form of expression is necessary, is therein set forth, and the authorities are there cited.  Now, after the part of this instrument which, as I have stated, is clearly and distinctly a lease, we find that it starts off with not, ''I grant,'' or like words, which would imply a purpose of conveying an estate from one to another, but ''It is understood and agreed''—words of compact; and then the next clause, ''And be it further understood,'' evincing an amicable arrangement and understanding between the parties, and a purpose to do something which it seems to us cannot be given effect.  Neither are the words of inheritance used; and it is the law of Ohio, as we understand it, that to convey a fee simple estate—except in some special cases—it is necessary to use the word, ''heirs.''  There are some qualifications to this, as where the instrument is a mortgage or a will instead of a deed; but, so far as we have discovered, there is no other or further qualification of the common-law rule upon the subject; and this instrument does not contain such word or any equivalent thereof, and it does not convey a fee simple estate to either Mary D. or Albert E. Scott.

Our conclusion is, therefore, that the legal estate rests where the quitclaim deed carried it—in Marion L. Scott.  While this will not accomplish exactly what the parties desired with respect to the remainder, it does not defeat any purpose of the parties to the instrument that can affect the interests of any of the heirs claiming here, for there is no

intent manifested therein to convey this remainder either to the heirs of Mary D. Scott or to the heirs of Albert E. Scott.

The remaining question is, whether this estate was carried to the devisees of Marion L. Scott, by her will, or whether she died intestate with respect to this piece of property so that it devolves upon her heirs?

It will be noticed from the transactions and dates that I have given, that this property was acquired by Marion L. Scott through this quit-claim deed, some time after she executed her will. It is therefore claimed by the maternal heirs of Albert E. Scott that her devise did not cover it so that it has descended from her to Albert and has descended from Albert to them. They call attention to the statute of the state upon the subject, Lan. R. L. 9508 (R. S. 5969), which reads:

"Any estate, right, or interest, in lands or personal estate or other property acquired by the testator after the making of his will, shall pass thereby, in like manner as if held or possessed at the time of making the will, if such shall clearly and manifestly appear by the will to have been the intention of the testator."

And they cite Paige on Wills and Jarman on Wills, to the effect that in a devise of realty it was settled at common law that the will could operate only upon property owned by the decedent at the time of the execution of the will and that after acquired property could not pass, and that under such statutes as we have here quoted it has been held by various courts of other states that the residuary clause does not pass after acquired real estate when it is not manifestly and clearly the intention to devise the after acquired real estate. Counsel representing this interest also cite upon that subject the case of Lepley v. Smith, 7 Circ. Dec. 264 (13 R. 189), decided by the circuit court in and for Holmes county, in 1896.

In that case the will under consideration, being made by a husband, contained a clause devising all of his property, both real and personal, to his wife to have and to hold during her natural life and dispose of as she saw fit, etc., and one of the questions in the case was as to the character of the estate she took and also as to whether she took any of the property which he afterwards acquired. This will devising all the property to the wife was made five years before the death of the husband. It gave to her the power of disposition of the fee of the property. The question in the case was, whether by the execution of her will she had exercised this power of disposition; and it was held, upon the peculiar facts of that case, that she had not, and that this after acquired property was not carried to her by the will. But it seems to us that the case of James v. Pruden, 14 Ohio St. 251, is no nearly like the case at

Lee v. Scott.

bar upon all material points involved, and that the general rules therein laid down upon the subject so completely cover the case at bar, that it should control. The syllabus in the case is as follows:

"Lands acquired after the making of a will disposing of all the testator's property, owned at his death, for specified purposes, will pass under its provisions."

Something has been claimed for the phrase, "specified purposes;" but that does not appear to have been used to qualify the rule. Some effect was given to the fact in that case, that the property which was devised was already owned by the testator at the time he made the will—that is to say, not the precise property, but property which afterward by a change of form, became the property in dispute. It was in the form at the time he executed his will of a claim secured by mortgage, and that was afterwards foreclosed and he acquired the mortgage estate, and reference is made to that in the course of the decision as a circumstance of some influence in the case. And the same is true here; it appears that the interest which Marion L. Scott had at the time she executed her will was the interest of an assignee of a mortgage—substantially the same as the mortgagee's interest in the Pruden case—, and afterward, in consideration of that, without going through the trouble and formality of a foreclosure, the mortgagors conveyed the legal title to her; and we think that under such circumstances such general provisions as are contained in her will devising all the rest and residue of her estate, covered and operated upon this property as well as her other property; and so we hold that the devisees acquired this property under her will.

**Hull** and **Haynes, JJ.,** concur.